Jasen, J.
In 1968 the Monroe County Legal Assistance Corporation, whose principal office is located in Rochester, was given approval by the Appellate Division, Fourth Department, to provide legal assistance to indigent persons in civil and administrative proceedings. In addition to its Rochester office, the corporation opened a second office in the Fourth Department at Corning. This office provides legal assistance to indigent persons in Steuben, Allegany and Cattaraugus Counties. For several years, the corporation endeavored to extend its operations into Sullivan County, a county within the Third Judicial Department.
The decision of the corporation to open a Sullivan County office was prompted by difficulties encountered by other organizations in delivering legal services to Sullivan County indigents. Prior to 1967, indigent defendants in criminal cases were assigned counsel by the court in which the criminal proceeding was pending. Civil matters were handled by volunteer attorneys assigned by the Sullivan County Bar Association. In 1967, the Appellate Division, Third Department, approved the incorporation of the Sullivan County Legal Services Corporation. (Matter of Sullivan County Bar Assn., 29 AD2d 608.) At about the same time, a Public Defender’s office was opened. The Federal funding provided the Sullivan County Legal Services Corporation was withdrawn in June, 1971, after unfavorable survey reports were turned in. (Matter of Westchester Legal Servs., 37 AD2d 1024.) The Office of Economic Opportunity offered to furnish Westchester Legal Services, Inc., with the funding necessary for that organization to expand into Sullivan County. The Westchester organization opened an office in the county without prior Appellate Division approval, but withdrew when the Third Department declined to issue the requested approval. The court rejected the application on the ground that the program was to be run by lawyers not "summarily responsible to the court.” (Matter of Westchester Legal Servs., supra, at p 1025.)
The Monroe County Legal Assistance Corporation attempted to fill the void. It sought to amend its certificate of incorporation by changing its principal area of operation from Monroe County to the State of New York. On December 21, 1971, this *543 amendment was approved by a Justice of the Supreme Court of the Seventh Judicial District. It was also approved by a Justice of the Appellate Division, Fourth Department, although that Justice did not specifically state whether he was acting on behalf of the appellate court. The corporation proceeded to open a Sullivan County office under the name of Mid-Hudson Valley Legal Services Project.
The project receives Federal funding to provide legal services to indigents in Sullivan, Orange and Dutchess Counties. In addition to its Sullivan County office at Liberty, it has offices in Middletown and Poughkeepsie. The Middletown and Poughkeepsie offices have been approved by the Appellate Division, Second Department, which has territorial jurisdiction over Orange and Dutchess Counties.
Mid-Hudson Legal Services is managed by a project director and by a committee, separately appointed in each county. These committees consist of five lawyers who practice in the particular county and four other persons representing different community organizations. The chairman of each committee is a member of the parent organization’s board of directors. The three chairmen together constitute the Mid-Hudson Executive Committee to which the parent board of directors has delegated authority to take any and all action which the board of directors might itself take with respect to the project. Actions taken by the executive committee are submitted to the parent board of directors on at least a quarterly basis for ratification.
On January 17, 1973, the Appellate Division, Third Department, acting on a motion by the corporation to waive compliance with court rules in an unrelated article 78 proceeding, held that its approval was required before the corporation could offer services to indigents in Sullivan County. (Matter of Ostrander v Wyman, 41 AD2d 580, mot for lv to app den 31 NY2d 647.) In May, 1973, the court authorized Mid-Hudson to operate in Sullivan County on a temporary basis since there was no legal aid program in the county capable of handling the cases that had backlogged since the Ostrander decision. (Matter of Monroe County Legal Assistance Corp., 41 AD2d 1000.) A series of temporary approvals and extensions permitted continued operation until December 31, 1974. On December 17, 1974, the Third Department denied any further extensions. By this time, the Legal Aid Society of Sullivan County, Inc., had been created and had become operational. The court *544 ruled that the Legal Aid Society was capable of handling the workload on its own and applied the rule, first enunciated in Matter of Westchester Legal Servs. (37 AD2d 1024, supra), that a legal services program must be supervised and directed by members of the local bar. (47 AD2d 606.)
The basic issue for our consideration is whether the approval of the Appellate Division, Third Department, was required before the corporation, through its subsidiary, the Mid-Hudson Project, could render legal assistance to Sullivan County indigents. Subdivision 5 of section 495 of the Judiciary Law requires that a legal services organization must obtain the approval of the Appellate Division of the Department "in which the principal office of such corporation or voluntary association may be located.” In this case, the principal office of the Monroe County Legal Assistance Corporation was and still is located in Rochester, within the jurisdiction of the Fourth Judicial Department. The Appellate Division for that Department approved the initial operation of this organization. In accordance with the provisions of both the Judiciary Law (§ 495, subd 5) and the Not-for-Profit Corporation Law (§ 201, subd [b]; § 404, subd [a]), approval for State-wide operation was subsequently obtained from the Appellate Division, Fourth Department. Nothing in the Judiciary Law requires any further approvals or consents. By its terms, section 495 does not require that additional approval be obtained from another Appellate Division whenever a legal services organization seeks to open a branch office outside its principal area of operation. (See Matter of Community Action for Legal Servs., 26 AD2d 354, 356, n 2.) The statute does not restrict a legal services organization, once having obtained the approval of one Appellate Division to operate State-wide, from opening a branch office anywhere in the state. If such a prohibition would be wise or expedient, it is for the Legislature, not for the Judiciary, to add it. (Cf. New York State Bankers Assn. v Albright, 38 NY2d 430, 440.)
In holding that section 495 does not require the prior first instance approval of an Appellate Division other than the one with territorial jurisdiction over the organization’s principal office, we do not imply that the other Appellate Divisions have no supervisory role with respect to lawyers employed or retained by organizations approved by another Department that operate within their jurisdictions. One of the major purposes of section 495 is to ensure, where the practice of law *545 may be conducted by a corporation, that the corporate shell does not screen the relationship between attorney and client from direct judicial oversight. (Matter of Feinstein [Attorney-General], 36 NY2d 199, 203; see Matter of Community Action for Legal Servs., 26 AD2d 354, 359, supra.) Once the corporate form has been approved, the Appellate Divisions have full authority to regulate the conduct and activities of attorneys for those corporations who practice within their respective jurisdictions. (Judiciary Law, § 90, subd 2.) A legal services corporation which has been approved by the Fourth Department may represent clients in the Third Department, but, in doing so, its attorneys subject themselves to the disciplinary authority of the Appellate Division for the Third Department. In this respect, the statutory scheme is akin to rules regulating the admission to the Bar of individual attorneys. While a candidate for admission to the Bar is processed through the Appellate Division of the Department in which he actually resided at the time of his application for permission to take the Bar examination (Judiciary Law, § 464), once admitted, he may practice in all courts of the State, wherever situated. (Judiciary Law, § 90, subd 1, par a.)
The clear and unambiguous language of subdivision 5 of section 495, requires that a legal services corporation obtain the approval of the Appellate Division in which its principal office is located. Since this organization did obtain approval, no further consents by another Department were necessary for its State-wide operation. Accordingly, the order of the Appellate Division should be reversed and vacated, and the petition, seeking this unnecessary approval, dismissed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur; Judge Cooke taking no part.
Order reversed and vacated, without costs, and the petition dismissed.